CITY OF WAKEFIELD v. TUTTLE.

INTERPLEADER—VENDEE ENTITLED TO HAVE RIGHTS OF PARTIES
DETERMINED AND ACTION AT LAW ENJOINED.

Where one of the vendors in a land contract insisted that the
vendee pay to her direct one-half of the sums due thereunder,
although under a contract between her and her attorneys she
was entitled to only five-twelfths, and commenced an action
to compel payment to her in accordance with her claim, the
vendee was justified in filing a bill of interpleader to have
the respective rights of the parties to the moneys due deter-
mined and the action at law enjoined.

Appeal from Gogebic; Driscoll (George O.), J.
Submitted June 21, 1928. (Docket No. 116, Calendar
No. 33,805.) Decided October 1, 1928.

Bill of interpleader by the city of Wakefield
against Marjorie F. Tuttle, Winifred J. Carson,
George G. Prentis, and others to determine the
rights of defendants to moneys due on a land con-
tract, and to enjoin an action at law. From the de-
cree rendered, defendant Carson appeals. Affirmed.

*Harry K. Bay,* City Attorney, for plaintiff.

*Charles M. Humphrey,* for appellant.

*Prentis, Pugh, Fitch & Carpenter,* for appellees.

SHARPE, J. The defendant Mrs. Carson and her
brother, Waldo M. Johnson, employed the firm of
Prentis, Pugh, Fitch & Carpenter, attorneys prac-
ticing in Detroit, to negotiate with the city of Wake-
field for the sale of a property to which they held

title, known as the Chicago Mine shaft. A contract resulted, in which the city agreed to pay to the sellers $25,000, payable, $500 on the execution of the contract (May 4, 1926) ; $9,500 on or before August 1, 1926; $10,000 on or before August 1, 1927, and the balance of $5,000 on or before February 1, 1928, with interest on such payments after August 1, 1926, at four per cent.—

"on any part of said purchase price at any time thereafter unpaid while this contract is not in default, and at the rate of seven per cent. (7%) per annum if the purchaser is in default, while such default continues, payable semi-annually after August 1, 1926."

This purchase was made by the city as a source of supply for water. The services of the attorneys were performed under separate contracts in writing. That with Mrs. Carson, signed by her on March 6, 1926, authorized the sale of the property to the city for not less than $25,000, and provided for a commission to the attorneys of 10 per cent. upon the amount received by her upon her five-twelfths interest therein. It also provided:

"It being understood that in addition to said 10% commission I have already advanced the sum of four hundred ($400.00) dollars to you, to be used by you in paying personal expenses covering trips to Wakefield and the payment of a per diem attorney fee for so doing as heretofore agreed between us."

Prior thereto these attorneys had acted for Mrs. Carson in a will contest, and she had agreed in writing that they should have as their fees therefor "one-half of whatever property or settlement" she should receive out of said estate. It is conceded that under said contract said attorneys became the equitable owners of a one-twelfth interest in the Wakefield

property. This explains why her five-twelfths interest was referred to in the contract with them.

The down payment of $500 was paid by the city to the attorneys. On July 20, 1926, they sent Mrs. Carson a statement crediting her with $400 she had advanced as per the agreement of March 6th; $208.33, being her five-twelfths share of the $500, and charging her with the 10 per cent. commission, $20.83; $300 for two trips made to Wakefield by Mr. Prentis (6 days at $50 per day), and certain expenses on such trips, telegrams and telephone calls and procuring certified copies of the records, in all $161.10, and sent her a check for the balance of $126.40.

The second payment of $9,500 was made by the city to the attorneys on August 1, 1926. On the following day they sent a statement to Mrs. Carson crediting her with five-twelfths thereof ($3,958.33) less their commission of ten per cent. ($395.83), and inclosed her a check for the balance of $3,562.50.

These facts seem to be undisputed. It is Mrs. Carson's claim that before the August payment was made she saw some of the officials of the city and insisted that they should make payment to her personally of one-half the sums payable under the contract. After the payment had been made to the attorneys, she declined to accept the checks and brought action in the circuit court of Gogebic county to recover one-half the amounts to be paid by the city as the down payment and first payment due on such contract and the interest penalty provided therein in case of payment after due.

The city thereupon filed the bill of complaint herein in the nature of an interpleader, admitting its liability under the contract, alleging the payments made to the attorneys, its willingness to pay accord-

ing to the terms of the contract, the commencement of such suit, and prayed that the respective rights of the parties to the moneys due under the contract be determined, and that the action at law be enjoined. The interest of Waldo M. Johnson had in the meantime been transferred to the defendant Marjorie F. Tuttle. She and the attorneys answered, setting forth their respective claims to the fund. The defendant Mrs. Carson asked dismissal.

Pending the hearing, a stipulation was filed, authorizing the city to make division of the moneys and interest due and payable on August 1, 1927, to the respective parties in the same relative proportions as the attorneys had divided that received by them on August 1, 1926.

The trial court in his opinion said:

"I am satisfied from the evidence this law firm was authorized to collect the moneys on Mrs. Carson's behalf and also that they are entitled to the expense money before mentioned."

He made division of certain interest moneys which had been paid into court, and provided for the division of the payment to become due on February 1, 1928, and decreed that on refusal of the parties to convey when the same was made a further application to the court might be made. He decreed costs against Mrs. Carson. From the decree entered she appeals.

It clearly appears, in fact it may be said to be conceded, that of the moneys payable by the city under the contract each of the parties have received, or have checks entitling them thereto, that to which they are entitled, except that Mrs. Carson claims the attorneys retained $51.10 out of the first payment more than they were entitled to. This arises out of her claim that her undertaking to pay expenses,

heretofore quoted, was limited to $400. Parol testimony was received, without objection, bearing on this question. The finding of the trial court relating thereto was warranted.

In our opinion the plaintiff was justified in filing the bill herein. It admitted its liability under its contract. Mrs. Carson was insisting that one-half the sums due thereon should be paid direct to her. She was entitled to but five-twelfths thereof, and this was subject to the attorneys' 10 per cent. commission thereon. A little forbearance on her part would have secured the payment of the moneys due under the contract to the several parties entitled thereto in the same manner as the payment was disbursed by stipulation after this suit was begun.

The decree is affirmed, with costs to appellees.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.